**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **WILLIAM PERROTTI,** | : | |
| **Plaintiff,** | : | |
| **v.** | : | **NO. 3:06-CV-01930 (WWE)** |
| | : | |
| **TOWN OF MIDDLEBURY, EDWARD ST.** | : | |
| **JOHN, HARWOOD LOOMIS, THOMAS** | : | |
| **O'LOSKEY and JEAN DONEGAN,** | : | |
| **Defendants,** | : | |

**MEMORANDUM OF DECISION ON DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

In this action, plaintiff William Perrotti alleges that the Town of Middlebury

("Town"), former Town First Selectman Edward St. John, architectural consultant

Harwood Loomis, Town Building Department Official Thomas O'Loskey, and Town

Zoning Enforcement Officer Jean Donegan retaliated against him in violation of his First

Amendment rights and violated his Fourteenth Amendment rights to due process and

equal protection of the laws.  Defendants have filed a motion for summary judgment.

For the following reasons, the motion for summary judgment will be granted.

**Factual Background**

The parties have submitted statements of undisputed facts with supporting

exhibits, which reveal the following factual background.

Plaintiff is the owner of a restaurant in Middlebury, Connecticut.  Defendant St.

John is a former First Selectman of Middlebury.  At the time relevant to this complaint,

defendant O'Loskey was the Middlebury Building Department Official; defendant

Donegan was the Middlebury Zoning Enforcement Officer; and defendant Loomis was

an architectural consultant to the Town.

1

Plaintiff commenced his business in 1988 as a delicatessen.  In 1994, plaintiff changed the business from a deli to a pizza restaurant known as "Perrotti's Pizza."  At that time, plaintiff installed public restrooms, ensured handicap-accessibility, and added parking spaces.  Prior to making these improvements, plaintiff submitted applications for approval of the addition of public restrooms and parking spaces.  Plaintiff was issued a Certificate of Occupancy ("CO") approximately six months after he submitted his applications for approval.[1]

In 1999, plaintiff submitted a building permit application to the Town to convert the attic space of his commercial building into an office.  Plaintiff submitted structural plans from an engineer without any architectural plans.  Plaintiff's building permit application was approved on December 29, 1999.

On September 22, 2000, plaintiff applied for a change in the Town's zoning regulations to allow for an apartment in his commercial building.  Plaintiff retained architect Russell Larrabee to assist him with the apartment project plans and approvals.

During inspection of the apartment, O'Loskey discovered that the necessary permit had not been obtained prior to implementation of the electrical and plumbing work.  Plaintiff paid several fines as result of his failure to obtain the proper permits.

---

[1]However, plaintiff points out that his plans were submitted on September 29, 1995, and his building permit was approved on November 20, 1995.

In April 2003, an establishment now known as The Hamlet filed an application to change its use to a restaurant.[2]  In June 2003, The Hamlet was issued a building permit.

In 2004, plaintiff became involved with a political group that represented certain Town residents who were unhappy with the then-current Town administration, particularly St. John.  Plaintiff allowed the political group to use the unapproved expansion space of his restaurant for meetings free of charge, although the attendees paid plaintiff for their food and beverages.[3]  Plaintiff permitted pamphlets to be placed in the restaurant that provided the dates and times of meeting of the political group.

In May 2005, plaintiff submitted an application to the zoning enforcement officer for approval of an expansion to his restaurant.  In August 2005, the Planning and Zoning Commission ("Commission") approved the application subject to certain conditions, including expansion of the paved parking area.

After plaintiff obtained zoning approval, plaintiff's architect, Larrabee, drew up plans for the proposed expansion.  On November 14, 2005, the first set of stamped and sealed plans for plaintiff's expansion project were submitted to the Town.

---

[2]The Town requires a permit if there is to be a change in use of an existing commercial space, even if no construction is required.  An applicant may not use the space for the new use until the CO is granted by the Town.

[3]The political group met at the restaurant space until April 2006.

3

The Town retained Loomis to review the plans that plaintiff had submitted for compliance with the State Building Code in effect at the time of the application. Loomis's retention as an outside consultant was authorized by the Board of Finance.[4]

At the time of plaintiff's application, the existing State Building Code was being replaced by a revised version.  Existing buildings must conform either to Chapter 34 or Chapters 1-33 of the State Building Code.  Under Chapter 34, a building is scored according to fire safety, means egress and general safety.  The combined scores must reach a mandatory minimum.

Larrabee was given the option to request a review of the building plans under either the new or old version of the State Building Code.  He requested that the plaintiff's building plans be reviewed under the old version of the State Building Code, except that he requested application of the new version of Chapter 34.

Larrabee had never previously prepared building plans using the new version of Chapter 34.  During the course of the project, Larrabee requested several modifications to the State Building Code, all of which were granted.

In a letter dated August 5, 2005, plaintiff wrote to Terry Smith, Chairman of the Planning and Zoning Commission, to lodge a "formal complaint" regarding his belief that the Commission had intentionally prolonged the progress of his application due to his political activity.  By letter, Smith responded that he found plaintiff's complaint to be "baseless."

---

[4]Loomis states that he did not meet St. John until the beginning of 2006.

St. John was reelected as First Selectman in the November 2005 election after defeating the political opponent whom plaintiff had supported.

In early November 2005, plaintiff submitted a Liquor Permit Extension of Use Request for the restaurant expansion, which request Donegan approved on November 7, 2005.

On November 28, 2005, Loomis provided his plan review to O'Loskey.  He reported that the plans were incomplete and did not meet the mandatory minimum score under Chapter 34.  Loomis cited 13 items in the plan as non-conforming to State Building Code requirements, including the occupancy load calculation.

The fire marshal, Jack Proulx, reviewed the November 14, 2005 building plans. On December 6, 2005, Proulx sent a letter to Larrabee, citing 12 issues that needed to be addressed so as to comply with the Connecticut State Fire Safety Code.

On January 18, 2006, Larrabee met with O'Loskey and other Building Department employees to discuss Loomis's plan review.

On February 21, 2006, Larrabee submitted revised plans.  On March 6, 2006, Loomis wrote a letter to O'Loskey regarding his review of the resubmitted plans for the restaurant expansion.  Loomis found that the plans still did not meet the minimum Chapter 34 score required for approval.

On April 3, 2006, Christopher Laux, the State Building Inspector, sent a letter to O'Loskey regarding plaintiff's restaurant expansion plans.  Laux, who is a friend of plaintiff, found some deficiencies in the building plans but also suggested that some of the issues identified by Loomis need not be fatal to the application.  Laux noted that

5

significant work appeared to have been performed without any permits.  He indicated that plaintiff was unaware that he could not use the space without first obtaining a CO.[5]

On April 5, 2006, O'Loskey issued a cease and desist order to plaintiff, requiring plaintiff to stop construction, modification and alteration of the premises without a valid building permit.

On April 7, 2006, Donegan issued a cease and desist order to plaintiff, requiring him to stop operating a premises for which no CO had been issued and to stop selling liquor without a valid special exception permit from the Planning and Zoning Commission.  Donegan issued this letter at the direction of the Planning and Zoning Commission, which had authority to control liquor sales.  Prior to issuing the cease and desist order, Donegan reviewed the recorded special exceptions to determine whether plaintiff had such a permit.  She did not find that he had been granted one.

Plaintiff had a special exception permit from the Planning Zoning Commission related to his liquor license but that exception had never been recorded.[6]

On April 25, 2006, plaintiff's attorney agreed that plaintiff would stop using the proposed bar area until the proper approvals were obtained.[7]

---

[5]Prior to obtaining a building permit, plaintiff had installed a bar, seating and light fixtures in the restaurant.  He had also improved the space by painting, wallpapering and putting down new floors.

[6]The applicant is responsible for recording special exception permits, and such permits are not effective unless they are recorded.

[7]Plaintiff did not appeal the cease and desist orders.

On September 11, 2006, Larrabee submitted further revised building plans.  On September 14, 2006, Loomis provided a review response of the plans and suggested further revisions.

On September 20, 2006, the State Department of Consumer Protection, Liquor Control Division, issued a permit verification that plaintiff held a valid liquor license.

In an e-mail to the Town's attorney Dana D'Angelo dated October 10, 2006, Donegan noted that she had signed a liquor license for plaintiff in 2001.  In a fax to Attorney D'Angelo dated October 27, 2006, Donegan requested assistance in determining whether plaintiff was entitled to a Certificate of Zoning Compliance for a full service restaurant that could serve liquor rather than a family restaurant that could serve only beer and wine.  She wrote:

> The other issue that I perceive as a problem is that the "Use" definitions are different than "Permitted Uses" in the Zoning Regulations.  "Bar" is all over the prints to the Building Department. I will not sign anything that has "bar" on the site plan as the Zoning Regulations do not even have a definition of "bar."  I will sign "family [r]estaurant" if Mr. Perrotti comes to apply and is granted this Special Exception.

In a letter dated October 31, 2006, Attorney D'Angelo responded to Donegan's request for assistance.  She noted that plaintiff had received a special exception permit for a family restaurant in 1997 for the original portion of Perrotti's that had previously been used as a deli, and that this special exception permit was recorded on May 11, 2006.   She reasoned that plaintiff could only operate a family restaurant under Middlebury Zoning Regulations because there had been no application for a change of use.

7

On October 17, 2006, Larrabee again submitted revised plans.  The revised building plans were approved and the building permit was issued on November 10, 2006.  On November 13, 2006, Donegan issued a Certificate of Zoning Compliance.  Plaintiff's applications for electrical and plumbing permits were also granted after the Certificate of Zoning Compliance was issued.

In late December 2006, the Town issued a temporary CO.

On January 3, 2007, plaintiff was issued a CO for the restaurant expansion.

### Discussion

A motion for summary judgment must be granted if the pleadings, discovery materials before the court and any affidavits show that there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A dispute regarding a material fact is genuine if there is sufficient evidence that a reasonable jury could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  Am. Int'l Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate.  Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  Liberty Lobby, 477 U.S. at 24.  The mere of existence of a scintilla of evidence in support of the nonmoving party's position is

8

insufficient; there must be evidence on which the jury could reasonably find for him. See Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the court resolves all ambiguities and draws all permissible factual inferences in favor of the nonmoving party.  See Patterson v. County of Oneida, 375 F.3d 206, 218 (2d Cir. 2004).  If there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper. See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

Count One: Equal Protection Violation

In count one, plaintiff alleges that defendants violated his right to equal protection of the law as guaranteed by the Fourteenth Amendment of the United States Constitution.  Specifically, the complaint alleges that defendants "singled Plaintiff out for unfair and intentionally discriminatory treatment compared to other similarly situated property owners."  In his brief, plaintiff sets forth that he pursues his claims according to theories of selective prosecution and "class of one" equal protection.  Defendants maintain that plaintiff has failed to establish any equal protection violation.

Selective Prosecution

To state a claim for an equal protection violation based on selective treatment or prosecution, a plaintiff must show that (1) he was selectively treated with respect to others similarly situated, and (2) such selective treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of

9

constitutional rights, or malicious or bad faith intent to injure a person." LaTrieste Rest. & Cabaret Inc. v. Vill. of Port Chester, 40 F.3d 587, 590 (2d Cir.1994).

Thus, plaintiff must first demonstrate that he was treated differently from other similarly-situated individuals.  Church of the Am. Knights of the KKK v. Kerik, 356 F.3d 197, 210 (2d Cir. 2004).  At the summary judgment stage, the plaintiff must present evidence comparing himself to individuals that are similarly situated in all material respects but were nonetheless treated differently.  Vassallo v. Lando, 591 F. Supp. 2d 172, 184 (E.D.N.Y. 2008).  Generally, the determination of whether comparators are sufficiently similarly situated is a factual question for the jury, although a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met.  Harlen Assocs. v. Inc. Vill. Of Mineola, 273 F.3d 494, 499 n.2 (2d Cir. 2001).

Plaintiff submits that his application for restaurant expansion in 2004-2005 was treated differently than his application to turn his attic into an office in 2001.  Plaintiff also points to other businesses that pursued zoning changes or construction projects that he contends did not encounter significant delays.  Plaintiff maintains that the comparators' applications took less time to gain approval.

Defendants attack the sufficiency of plaintiff's comparators as establishments smaller than plaintiff's, projects subject to different sections of the Building Code, and buildings lacking residential apartments.

Plaintiff fails to indicate whether the comparators' applications were found to have inconsistencies with the State Building Code.  However, for purposes of ruling on this motion for summary judgment, the Court will assume that plaintiff has raised a

10

factual issue for a jury determination as to the whether these comparators are similarly situated.  See Kirschner v. Zoning Board of Appeals of Inc. Vill. of Valley Stream, 924 F. Supp. 385, 395 (E.D.N.Y. 1996).

Nevertheless, plaintiff's selective prosecution claim fails because he has not raised an inference of fact that his application was treated differently from the comparators due to an intent to inhibit or punish him for his exercise of his First Amendment rights.  Here, there is no evidence that Loomis's review of plaintiff's application and his finding of lack of compliance with the State Building Code were impermissibly based on plaintiff's political involvement.  Plaintiff has not submitted any expert evidence to attack the legitimacy of defendants' review of his application.  His opposition to summary judgment lacks proof that review of his application was improper, incompetent or untimely.  No evidence evinces an inference that the comparators were not subjected to the same review and requirements to comply with the State Building Code.

Further, plaintiff has not demonstrated an inference of fact that defendants improperly issued any cease and desist order.  As defendants submit, it was rational to issue such cease and desist orders because plaintiff was doing work that required a permit without such a building permit, and because plaintiff was using the expansion space as a meeting place where individuals paid for food and beverage prior to obtaining the requisite CO.

Similarly, no evidence indicates that the cease and desist order to stop plaintiff from serving liquor without a valid special exception license permit was issued to inhibit

or punish him for his political activities.  Plaintiff does not dispute that Donegan could not find his special exception permit because it had not been recorded.

Upon review of the record, the Court finds that no evidence indicates that an impermissible pretext underlies defendants' legitimate bases for issuing these orders. Accordingly, the Court will grant summary judgment on plaintiff's selective prosecution equal protection claim.

<u>Class of One</u>

Plaintiff's class of one equal protection claim is also subject to summary judgment in defendants' favor.  In order to prevail on his class of one claim, plaintiff must demonstrate that: (1) he was treated differently from a similarly-situated individual; and (2) the differential treatment was arbitrary and irrational.  <u>Vill. of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000).[8]

As to the first element, plaintiff must make a showing of an "extremely high degree of similarity" between himself and his comparators.  <u>Donniger v. Niehoff</u>, 527 F.3d 41, 53 (2d Cir. 2008).  Plaintiff has failed to make this showing.  However, plaintiff's claim fails regardless of whether he can meet the requisite similarly-situated showing.  Consistent with the previous discussion relevant to selective prosecution, plaintiff has failed to proffer evidence indicating that defendants acted without a rational basis.  Accordingly, the Court will also grant summary judgment on the class-of-one claim.

---

[8]Courts within the Second Circuit have evaluated selective enforcement and class-of-one claims as distinct theories with differing elements of proof.  <u>Tarantino v. City of Hornell</u>, 615 F. Supp. 2d 102, 112 (W.D.N.Y. 2009).

Count Two: Retaliation in violation of the First Amendment

Defendants argue that summary judgment should enter on plaintiff's First Amendment retaliation claim because he has no evidence that a retaliatory adverse action occurred.  The Court agrees.

To establish a First Amendment claim, plaintiff must show that (1) his conduct was protected by the First Amendment; and (2) such conduct prompted or substantially caused defendants' action.  Dougherty v. Town of North Hempstead Bd. of Zoning, 282 F.3d 83, 91 (2d Cir. 2002).  Circumstantial evidence of a retaliatory motive may include a showing of disparate treatment, or an ongoing campaign of adverse action.  Rose v. Julliano, 2008 WL 5233178, *5 (E.D.N.Y.)  Plaintiff can also establish retaliatory motive by demonstrating that defendants were aware that plaintiff had engaged in protected speech and the challenged behavior closely followed that protected speech. McCullough v. Wyandanch Union Free School Dist., 187 F.3d 272, 280 (2d Cir. 1999). Although there is no bright line to determine whether the amount of time between the protected and adverse action raises an inference of retaliation, the Second Circuit has previously found that a year is too attenuated.  Burkybile v. Bd. of Educ. of Hastings-on-Hudson Union Free School, 411 F.3d 306, 314 (2d Cir. 2005).

In this instance, plaintiff submitted his application for his restaurant expansion in the same year as his involvement with the political activities against St. John.  Loomis completed his first review of plaintiff's application after the election on November 28, 2005, and after revising the application, plaintiff received his temporary CO in December 2006.  The cease and desist orders were issued in April 2006.

13

Plaintiff alleges that Loomis was retained by the Town at St. John's direction in order to interfere with the approval of plaintiff's planned restaurant expansion and that the cease and desist orders were issued at the direction of St. John.

The Court recognizes that plaintiff's application review occurred within a temporal proximity to his political activity.  However, plaintiff's proof is deficient because he has failed to raise an inference that St. John had any role in retaining Loomis to review his application, directed Loomis or any other defendant to hinder his ability to obtain approval of his project, or that St. John had directed any of the zoning enforcement or building department employees to take retaliatory action against him.

St. John did testify that, as First Selectman, he acted as the chief executive officer of the Town, and that he was family friend of O'Loskey.[9]  Plaintiff seizes upon this evidence to advance his contention that St. John must have been involved in the decisions at issue in this case.  However, plaintiff's proof is based on speculation or conjecture, which is not sufficient to create an issue of fact to defeat summary judgment.  Shub v. Westchester Community College, 556 F. Supp. 2d 227, 248 (S.D.N.Y. 2008).

Further, there is no indication that any of the other defendants acted with an improper purpose to retaliate against plaintiff for his political activities.  As previously discussed, defendants' acts were based upon legitimate concerns about compliance

---

[9]St. John also testified that he was generally not involved in the day-to-day operations of the Building Department, that he did not attend Planning and Zoning Commission meetings after the late 1980s, and that he was not made aware of applications for small building projects such as remodeling within an existing structure.

with the State Building Code and plaintiff's conduct that required certain authorizations. Accordingly, summary judgment will enter on plaintiff's First Amendment retaliation claim.

### Count Three: Due Process Violation

Plaintiff's complaint does not specify whether he alleges a procedural or substantive due process violation.  However, his opposition to summary judgment advances only arguments relative to substantive due process.  Specifically, plaintiff's opposition states that plaintiff had a "valid and vested property interest in his liquor permit" and that defendants infringed upon that right.  He asserts that defendants attempted to limit his permit to service of wine and beer and delayed his use of that permit in the expanded area.[10]   Defendants argue that plaintiff's action fails the requisite elements for a substantive due process claim.

To state a claim for a violation of substantive due process in the context of permits issued pursuant to zoning laws, a plaintiff must (1) establish a valid property interest in a benefit entitled to constitutional protection, and (2) show that arbitrary and irrational zoning actions deprived plaintiff of that benefit.  Brady v. Town of Colchester, 863 F.2d 205 (2d Cir.1988).

An interest in a particular land-use benefit may qualify as a property interest for the purposes of a substantive due process claim where a landowner shows a clear entitlement to that benefit.  O'Mara v. Town of Wappinger, 485 F.3d 693, 700 (2d Cir. 2007).  Whether a clear entitlement exists ordinarily is an issue of law.  Natale v. Town

---

[10]In his complaint, plaintiff failed to allege this claim.  In the interest of justice, the Court considers its merits in this ruling.

15

of Ridgefield, 170 F.3d 258, 263 (2d Cir. 1999).  Uncertainty as to the meaning of the applicable law defeats a claim to a clear entitlement.  See Clubside, Inc. v. Valentin, 468 F.3d 144, 153 (2d Cir. 2006).  Plaintiff "must show that, at the time the permit was denied, there was no uncertainty regarding his entitlement to it under applicable state or local law, and the issuing authority had no discretion to withhold it in his particular case." Natale, 170 F.3d at 263 n.1.

"Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority." Id. at 263. To succeed on his substantive due process claim, plaintiff must show that defendants' conduct "shocks the conscience."  County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998).  Only the most egregious official conduct violates a party's substantive due process rights.  Cusick v. City of New Haven, 2005 WL 1916364 (2d Cir.) (failure of officials to provide inculpatory information unearthed in murder investigation was not conscience shocking); see also Whitley v. Albers, 475 U.S. 312, 327 (1986) (substantive due process doctrine bars official conduct that affords "brutality the cloak of law").  Even conduct considered to be reprehensible may not fall within the narrow range of conscience-shocking conduct that violates substantive due process. Cusick, 2005 WL 1916364.  In the context of a land use or zoning action, arbitrary or irrational conduct occurs only when the government acts with no legitimate reason for its decision.  Crowley v. Courville, 76 F.3d 47, 52 (2d Cir. 1996).

In this instance, plaintiff's claim fails because a liquor license represents a personal privilege rather a property interest protected by the Constitution.  Riley v. Liquor Control Comm'n, 153 Conn. 242, 247 (1965).  Further, the record evidence does

16

not demonstrate any conduct that could be considered conscience shocking or arbitrary and capricious.  Accordingly, summary judgment will enter in favor of defendants.

### Conclusion

For the foregoing reasons, the motion for summary judgment (Doc. #33) is GRANTED.  The clerk is instructed to close this case.

Dated at Bridgeport, Connecticut, this __31st__ day of October, 2009.

_____/s/_____
Warren W. Eginton
Senior United States District Judge